JOHN W. HUBER, United States Attorney (#7226)
JENNIFER E. GULLY, Assistant United States Attorney (#15453)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANEE SO, THY LOEUY, SOMCHETH YOK, VONG JOHN SENETHAVISOUK a/k/a JOHN SENETHAVISOUK,<br><br>Defendants. | Case No.  2:20mj354 CMR<br><br>FILED UNDER SEAL<br><br>**COMPLAINT**<br><br>VIOLATION:<br><br>21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, Conspiracy to Distribute Methamphetamine (Count 1)<br><br>Hon. Cecilia M. Romero<br>United States Magistrate Judge |

Before Cecilia M. Romero, United States Magistrate Judge for the District of Utah, appears the undersigned who, on oath deposes and says:

<u>COUNT 1</u>
21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846
(Conspiracy to Distribute Methamphetamine)

Beginning on a date unknown but at least by September 5, 2019, and continuing up to and including at least May 7, 2020 in the Central Division of the District of Utah and elsewhere,

DANEE SO, THY LOUEY, SOMCHECTH YOK,

1

and VONG JOHN SENETHAVISOUK a/k/a JOHN SENETHAVISOUK, the named defendants herein, did knowingly and intentionally conspire with others known and unknown to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the meaning of 21 U.S.C. § 812; all in violation of 21 U.S.C. § 841(a)(1) and § 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

### AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Jack Marberger, a Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. I have been employed by the FBI since July of 2011. I am currently assigned to the FBI Safe Streets Task Force ("SSTF") and I am tasked with investigating street gangs and drug trafficking. As a Special Agent with the FBI, I have participated in several investigations involving drug trafficking activities in violation of 21 U.S.C. §§ 841 and 846. These investigations have resulted in the arrests and convictions of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of controlled substances and proceeds of the sale of those controlled substances. I am familiar with the appearance, packaging, common usage and terminology regarding controlled substances through my training, experience, and observation. I have assisted in and facilitated narcotics and weapons transactions utilizing undercover officers and confidential sources throughout the country.

2.     This affidavit is made in support of a criminal complaint against and arrest warrants charging DANEE SO, THY LOEUY, SOMCHECTH YOK, and VONG JOHN SENETHAVISOUK a/k/a JOHN SENETHAVISOUK with violation of Title 21 United States Code, Section 841(a)(1) and Section 846, Conspiracy to Distribute Methamphetamine (Count 1).

3.     The facts and information contained in this affidavit are based upon my direct participation in this investigation and as related to me by other law enforcement officers pertaining to this investigation. This affidavit is intended to show merely that there is probable cause for the requested complaint and arrest warrant and is not intended to include each and every fact and matter observed by me or known to the United States of America.

## PROBABLE CAUSE

4.     The Federal Bureau of Investigation ("FBI") has an open investigation of a drug trafficking organization involving DANEE SO ("SO") and others, in the Salt Lake City area that is believed to have several different sources of supply. The investigation has involved seven controlled purchases of methamphetamine from SO in increasing amounts. The first of those buys was in September 2019, and an undercover officer (UCO) was introduced to SO that month and has been used for some of the controlled buys from SO since then. The most recent controlled buy was on February 15, 2020 and one pound of methamphetamine was purchased from SO using the UCO. Until the pandemic restrictions associated with Covid-19 tightened the supply of methamphetamine in the District of Utah and elsewhere, SO did not express any hesitation to acquire or deliver the increasing amounts of methamphetamine during this investigation. And, even with the limited supply of methamphetamine in Utah, SO has managed to continue locating and distributing methamphetamine with the help of the named co-conspirators and others.

5.  Since February 14, 2020, FBI Agents have intercepted SO's wire and electronic communications pursuant to three orders authorized by Chief District Judge Robert J. Shelby. Those interceptions, combined with surveillance and other investigation, has established probable cause that SO, the named co-conspirators, and others known and unknown, have engaged in a conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846.

6.  SO and THY LOEUY ("LOEUY") are in contact throughout the investigation and communicated repeatedly about their drug business, which was not limited to methamphetamine. On February 24, 2020, for example, SO asked LOEUY, "Can u get any pain pills?" LOEUY replied, "Maybe let me see," and later she said, "He said he has ox." Agents interpret this message to mean that SO is asking for prescription pain pills to sell and LOEUY could get some for him. Later that day, LOEUY asked how many "Oxy's" he wants and SO replied, "I'm going to call her back."

7.  On March 23, 2020, LOEUY sends SO repeated texts begging him to sell her "ANYTHING" and SO responded that he could. Several weeks later, on April 9, 2020, LOEUY reaches out to SO on behalf of another buyer. , "He wants me to ask you if you had anything." SO replied, 'He realize it's this late? And he's the one that's scared? LOEUY said, "No he asked you for a P? I don't know what happened though. SO replied, "What the hell? It's just going to get drier. But um, yeah I just got in today." Agents interpret this exchange to mean that LOEUY had a buyer for a pound of methamphetamine but SO doesn't have any to sell, or at least not to her buyer. And later, on April 14, 2020 SO says, "We are drier than a mother f***. All the states are f*** on call, like we can't cross states." He tells LOEUY, "I said you better come and grab it while you can, while there is still meth." LOEUY responds, "There is only a few people that have it really, and nothing else is coming in and who knows for how long, oh gosh."

4

8. On March 28, 2020, with SO's main supply of methamphetamine disrupted due to the pandemic restrictions, SO and SOMCHETH YOK ("YOK") discuss splitting the purchase of 7 pounds of methamphetamine from a local supplier and doing "3 ½ each." SO discussed getting money from YOK and traveled to XXXX S. XXXX E. in Midvale, Utah, which was later identified as YOK's address, to pick up the money. They ultimately decided not to do the deal because the local supplier wanted the money before delivering the drugs. SO didn't want to "let the money walk." They decided to pursue another supplier.

9. VONG JOHN SENETHAVISOUK ("SENETHAVISOUK"), who resides in Fresno, California, was that other supplier.

10. On March 28, 2020, SO and LOEUY have a discussion about the limited supply of methamphetamine in Utah for a good price. On March 29, 2020, after the deal with YOK and the local supplier falls through, SO asks LOEUY if she wants to travel with him to Fresno, California, to buy some methamphetamine from SENETHAVISOUK, someone they both know as "John." SO explains that John wants them "to try his shit" and, then indicates to LOEUY that he is planning to buy some of it. LOEUY indicated a ready willingness to go with SO to Fresno. Their plan was to stay one day. On March 29, 2020 SO and SENETHAVISOUK exchanged several phone calls about SO's plan to travel to Fresno, California with LOEUY. SO asks SENETHAVISOUK if SENETHAVISOUK could have 13 or 14 pounds of methamphetamine because he already had money from a friend, which Agents know to be Yok, to buy it. SENETHAVISOUK replied "Yeah okay."

11. The next day, on March 30, 2020, SENETHAVISOUK sent SO his address via text message: "XXX E Josh Ave, Fresno, CA 93076."

12. Much earlier that day, on March 30, 2020, starting at approximately 12:49 a.m., Agents intercepted an audio text sent from SO to YOK in which SO said "Damn, you should look up the

5

shipping prices, it looks like it's going to be about 170 for overnight." Several minutes later, YOK responded to SO with a text message "For all of them?" to which SO responded with an audio text message "Yeah, you can go to FedEx.com and actually look it up. Like it'll say in one box, how much it'll be duh, duh, duh." Agents interpreted this exchange as SO telling YOK that he was planning to ship the methamphetamine back to Salt Lake City using FedEx overnight shipping at a cost of $170, to which YOK confirmed that SO was talking about the whole load.

13. The afternoon of March 30, 2020 SO tells LOEUY to meet him at the bank to pick up the money to take with them to Fresno to pay SENETHAVISOUK for the methamphetamine. LOEUY asked, "What bank?" SO replied, "America First, so we can get cash, put into f***ing hundreds so that...cause they are going to weigh our f***ing things." LOEUY responded "I'm not bringing that much," which Agents interpret to mean that her luggage won't weigh that much. And So said "I'm not bringing that much either. I'm just saying the money is going to be a lot already." Agents interpret this to mean that SO was worried about the weight of the cash in the luggage because he and LOEUY were planning to pack the cash that they get from America First in their luggage to take with them to Fresno to buy the methamphetamine from SENETHAVISOUK.

14. Surveillance observed SO pick up LOEUY on the afternoon of March 30, 2020 and then drive to an America First Credit Union at 3253 West 3500 South, in West Valley, Utah. They had tickets to fly to Fresno, California on March 30, 2020, but missed the flight. The following day, on March 31, 2020, surveillance watched SO and LOEUY get on a plane at the Salt Lake City airport, bound for Fresno.

15. SO and LOEUY arrived in Fresno on March 31, 2020 and surveillance followed SO and LOEUY to SENETHAVISOUK's house at the address he texted to SO. Interceptions over SO's phone revealed that it took a couple of days for SENETHAVISOUK to secure the methamphetamine. On April

1, 2020, SO called YOK, and during the intercepted call SO told YOK, "We are still here til tomorrow, The other people flaked and so and so we." YOK replied, "Are you serious?" SO said, " Yea, cause I only brought that much money, You know what I mean?  I didn't have any more cash." YOK told SO "Just get that first and we can see if you like it, and if you like it we can give them more money.  Next time we will get more, you know. Next time we will get more." SO said, "Oh yeah we are still waiting to test it out…I was hoping to get back yesterday but when we got here, it was 10:00 o'clock and with the curfew thing.  It was too late and so they couldn't do anything.  Because today the earliest shift would be tomorrow, because the things cancelled and so it will have to be tomorrow." YOK replied, " Oh man, the other one flaked?" Agents interpret this exchange to mean that because there was a curfew they couldn't get the supplier to deliver and that the supplier didn't come through for them and SO was hoping they could get the drugs the next day.

16.     SO and LOEUY stayed in Fresno a couple more days and then sent the methamphetamine to Salt Lake City via FedEx overnight delivery to potentially arrive at SO's house on April 3, 2020.  On April 3, 2020 at approximately 1:33 am, during an intercepted call between SO told YOK, " Yeah, so I got 10 of them. But damn shipping was 200." YOK replied, "Damn."  SO said, "I know but it's still worth it."  YOK responded, "Yeah I'll pay for half." Agents interpret this exchange as SO obtained 10 pounds of methamphetamine and it cost him $200 to ship it and YOK agrees to split the cost.  SO flew back to Salt Lake early on April 3, 2020.

17.     On April 3, 2020, Surveillance observed FedEx deliver a package to SO's apartment building, XXXX S. XXX E. Salt Lake City, Utah at approximately 10:11 a.m.  At approximately 10:24 a.m., SO called YOK and told him that the methamphetamine had arrived: "Oh my gosh it's finally here." YOK responded, "OK, I gotta eat something real quick then I'll head over."   Shortly thereafter, Agents observed YOK leave his known residence and drive to SO's residence.  YOK was at SO's

7

building for a short period of time and left SO's residence. YOK was stopped by local law enforcement for a vehicle registration violation and a certified narcotics canine indicated on the vehicle. Approximately 4.6 pounds of a crystalline substance that field-tested positive for methamphetamine was seized from the vehicle.

18. YOK was read his Miranda rights and agreed to talk to investigators without an attorney present. YOK stated that he had obtained the methamphetamine from SO for $5,000, although his agreement with SO is that he would pay him $3,600 per pound. SO met YOK at the back of his apartment building to give him the methamphetamine. YOK showed investigators on a Google map SO's building, which was recognized by Agents as SO's apartment building. YOK has been inside of SO's apartment and stated that SO is careless and has drugs all over the place in plain view. YOK explained that SO's apartment is usually accessed from the back of the building on the east side and his apartment is on the bottom to the left (north) when entering from the back.

## CONCLUSION

19. Based upon the facts set forth in this affidavit, I believe that probable cause exists to support charges against DANEE SO, THY LOEUY, SOMCHETH YOK, and VONG JOHN SENETHAVISOUK a/k/a JOHN SENETHAVISOUK for violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

DATED this 7th day of May 2020.

JACK MARBERGER
Special Agent
Federal Bureau of Investigation

JOHN W. HUBER
United States Attorney

_____
JENNIFER E. GULLY
Assistant United States Attorney

     SUBSCRIBED AND SWORN TO BEFORE ME this 7th day of May, 2020. Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___via Facetime_____(specify reliable electronic means).

_____
CECILIA M. ROMERO
United States Magistrate Judge

9